UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
ALEXIS ALVEAR-RUIZ,

                            NOT FOR PUBLICATION
            Petitioner,            **MEMORANDUM & ORDER**
                             CV-04-0234 (CBA)
      -against-

UNITED STATES OF AMERICA,

            Respondent.
---------------------------------------------------------X
AMON, United States District Judge.

        Petitioner Alexis Alvear-Ruiz has moved to vacate his conviction pursuant to 28 U.S.C. §

2255.  For the reasons set forth below, Alvear-Ruiz's motion is denied.

## I.        Background

        On March 26, 1996, a Drug Enforcement Administration ("DEA") "buy and bust"

operation culminated in the arrest of Alvear-Ruiz, among others.  DEA Agent Jeff Moran

worked undercover as a drug dealer in the operation, and Agent John McKenna participated in

the arrests.  Upon Alvear-Ruiz's arrest, the DEA agents read him his rights; Alvear-Ruiz

immediately indicated that he wanted to cooperate with the agents, and subsequently provided a

detailed written confession which described his involvement in two prior heroin transactions.

After his release on bail pending trial, Alvear-Ruiz absconded.  He was later found, tried, and

convicted – first, in February of 1999, for bail jumping in violation of 18 U.S.C. § 3147 and

later, in July of 2000, for conspiracy to possess and distribute heroin, in violation of 21 U.S.C. §

841(a).  Alvear-Ruiz was initially sentenced to a term of 188 months of imprisonment, but that

sentence was later vacated by the Second Circuit on appeal and he was re-sentenced to a term of

151 months of imprisonment.  See United States v. Alvear-Ruiz, No. 00-1787 (2d Cir. April 18,

1

2002).[1]  During his trial, Alvear-Ruiz was represented by Richard Levitt and, on appeal, by B. Alan Seidler.  Paul Gamble later became Alvear-Ruiz's appellate counsel.

On January 15, 2004, Alvear-Ruiz filed a document with this Court, entitled "Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255" in which he asserted that he was denied effective assistance of trial counsel, and that DEA Agents McKenna and Moran perjured themselves at trial.  On February 12, 2004, the Court ordered the United States Attorney for the Eastern District of New York, as counsel for the respondent, to show cause as to why Alvear-Ruiz's § 2255 petition should not be granted.  Shortly thereafter, on February 16, 2004, Alvear-Ruiz sent to the Court a copy of a letter sent to his appellate counsel, Mr. Gamble.  In that letter, Alvear-Ruiz indicated that he had sent the § 2255 motion to Mr. Gamble in order to explain to him the issues that he wanted raised in "the motion 22§55 [sic] that you are preparing for me."  He indicated that he had sent a copy of the same document to the Court, but that he did not intend that the Court file the document as a § 2255 motion.

On June 15, 2004, the government filed a response to Alvear-Ruiz's January 13, 2004 petition.  Notwithstanding his February 16, 2004 letter, in which he indicated that he had not intended to file a § 2255 motion with the Court, on July 30, 2004, Alvear-Ruiz filed an opposition to the government's response, addressing the merits of his claims.  In addition, he filed a request to amend his petition to include an argument that his trial counsel was ineffective for failing to inform him of an allegedly proferred plea agreement and that his sentence violated

---

[1]        In his appeal to the Second Circuit, Alvear-Ruiz raised, <u>inter alia</u>, an ineffective assistance of counsel claim, asserting that his trial counsel (1) failed to move to suppress his post-arrest statement and (2) adopted a defense strategy allegedly contrary to Alvear-Ruiz's instructions.  The court rejected these claims.

Blakely v. Washington, 542 U.S. 296 (2004). On March 10, 2005, Alvear-Ruiz filed a second request to amend his habeas petition. In that request, he reiterated the Blakely argument, citing additionally to United States v. Booker and United States v. Fanfan, 543 U.S. 220 (2005), and argued that his conviction violated Crawford v. Washington, 541 U.S. 36 (2004).

On February 18, 2006, Alvear-Ruiz filed a motion to withdraw his pending § 2255 application without prejudice and to file another § 2255 petition contending that counsel who represented him at sentencing was ineffective for failing to file and perfect his appeal from his re-sentencing. In that letter, Alvear-Ruiz informed the Court that he had not intended to file a § 2255 motion in January of 2004, but had merely been sending the court "a carbon copy of [a] letter sent to counsel stating the claim(s) to be included in the expected appeals." On April 11, 2006, this Court issued an Order, noting that it would allow Alvear-Ruiz to withdraw his habeas petition if he desired, but that doing so may prejudice him. The Court therefore asked Alvear-Ruiz to clarify his intentions. In response, Alvear-Ruiz informed the Court that he did not wish to withdraw his habeas petition but instead sought to amend his petition to include a claim for ineffective assistance of counsel for failure to file and perfect an appeal from his re-sentencing. Alvear-Ruiz further explained that if "he is not entitled to said appeal . . . he would request that the now pending § 2255 be resolved on the merit[s]."

In an order dated April 27, 2007, the Court declined Alvear-Ruiz's request to amend his petition to include Blakey, Booker, and Crawford, claims, finding that such claims were meritless. However, the Court ordered the United States Attorney for the Eastern District of New York, as counsel for the respondent, to show cause why Alvear-Ruiz should not be allowed to amend his petition to include two claims of ineffective assistance of counsel: (1) Alvear-

Ruiz's claim of ineffective assistance of trial counsel, predicated upon Richard Levitt's alleged failure to advise him of a plea offer; and (2) Alvear-Ruiz's claim of ineffective assistance of appellate counsel, predicated upon Paul Gamble's alleged failure to file and perfect a notice of appeal from his resentencing. For the reasons set forth below, the Court finds that these claims are meritless and denies Alvear-Ruiz's request to amend his petition.

Finally, as detailed below, the Court finds that the arguments raised by Alvear-Ruiz in his initial habeas petition are also meritless. Accordingly, Alvear-Ruiz's request to vacate his conviction pursuant to 28 U.S.C. § 2255 is denied.

## II. Discussion

### A. Alvear-Ruiz's requests to amend his petition

Alvear-Ruiz has requested an amendment to his petition to include a claim of ineffective assistance of trial counsel and a claim of ineffective assistance of appellate counsel. In order to demonstrate ineffective assistance of counsel, a petitioner must satisfy the two pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). See also United States v. Cullen, 194 F.3d 401, 401-04 (2d Cir. 1999). Under Strickland, the petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 698. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In addition, "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." Kimmelman v.

Morrison, 477 U.S. 365, 381 (1986); see also United States v. Bayless, 201 F.3d 116, 130 (2d Cir. 2000). The Supreme Court has explained the "reasonable probability" of the prejudice prong to mean "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### 1. Ineffective assistance of trial counsel amendment

Alvear-Ruiz requests to amend his habeas petition to include an argument that his trial counsel was ineffective for failing to inform him of a plea agreement offered by the government. Alvear-Ruiz asserts that the government proposed a plea agreement for a 72 month sentence and that he told his trial counsel, Mr. Levitt, he wished to accept the offer.

It is well established that "counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution." Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999). Failure to do so constitutes deficient performance. Id. In order to show prejudice, however, the petitioner must show that there is a "reasonable probability" that he would have accepted the plea offer. Id. at 405. Generally, the Second Circuit "requires some objective evidence other than defendant's assertions to establish prejudice" although "a significant sentencing disparity in combination with defendant's statement of his intention is sufficient to support a prejudice finding." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003).

In the instant case, Alvear-Ruiz's assertion that his attorney did not inform him of an allegedly proffered plea agreement rests solely upon "conclusory and/or self-serving affidavits." See Rosario-Dominguez v. United States, 353 F. Supp. 2d 500, 520 (S.D.N.Y. 2005). In contrast, Alvear-Ruiz's attorney, Mr. Levitt, and AUSA Jonathan Davis have submitted "detailed affidavit[s] . . . credibly describing the circumstances" surrounding the alleged plea

negotiations. Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001) (no testimonial hearing is necessary where petitioner's assertions are based on conclusory and self-serving affidavits, and where a testimonial hearing "would add little or nothing to the written submissions"). In addition, AUSA Davis has provided the Court with copies of the correspondence between the United States Attorney's Office and Mr. Levitt during this time.

Trial on the superseding indictment, which contained both a charge of bail-jumping and the original charge of conspiring to distribute heroin, was scheduled to begin on February 22, 1999. Prior to trial, Mr. Levitt inquired whether the government would consider disposing of the case pursuant to a plea agreement. On January 26, 1999, AUSA Davis faxed a proposed plea agreement, in which Alvear-Ruiz would plead guilty to the distribution conspiracy charge and the government would suggest a Sentencing Guidelines estimate of 70-87 months. (Davis Aff. Exh. 1.) That plea agreement was set to expire on February 3, 1999. (Id.) After this proposed plea agreement expired, Mr. Levitt informed AUSA Davis that his client had rejected the government's offer. (Davis Aff. at ¶ 5.) Accordingly, the case proceeded to trial before Judge Trager. The jury found Alvear-Ruiz guilty on the bail-jumping count. However, the jury was deadlocked with respect to the distribution conspiracy count, and the Court declared a mistrial on that count.

Prior to retrial, AUSA Davis and Mr. Levitt again discussed possible resolution of the distribution conspiracy count pursuant to a plea agreement. The government proposed that Alvear-Ruiz would plead guilty to a superseding information charging a violation of 21 U.S.C. § 843 (use of a telephone to conduct narcotics trafficking), which carries a statutory maximum of 48 months, and that the government would dismiss the distribution conspiracy count. (See Davis

Aff. Exh. 2.)  However, Mr. Levitt was concerned about the possible effects of the "pour-over" provision of section 5G1.2(d) of the Sentencing Guidelines if Alvear-Ruiz were to be sentenced on the telephone count at the same time as the bail-jumping count.  Accordingly, Mr. Levitt advised the government that the approach outlined in the discussion draft of the plea agreement was unsatisfactory, and the government revoked "all plea offers, definite or discussed."  (See Davis Aff. Exh. 4.)  Mr. Levitt then made a counter-offer, proposing that Alvear-Ruiz would plead guilty to the telephone count pursuant to a plea agreement if he was sentenced on the bail-jumping count in advance of a guilty plea on the telephone count.  The government accepted Mr. Levitt's proposal and on August 10, 1999, Judge Trager sentenced Alvear-Ruiz to 24 months on the bail-jumping count.  Judge Trager specifically explained that he was imposing a sentence on the lower end of the Guidelines in anticipation of Alvear-Ruiz's expected plea on the telephone count, which would likely require a sentence of 48 months under the Guidelines.  (August 10, 1999 Sent. Tr. 14.)

Accordingly, on October 7, 1999, AUSA Davis sent Mr. Levitt a letter enclosing a new proposed plea agreement under which Alvear-Ruiz would plead guilty to the telephone count. (Davis Aff. Exh. 5.)  The parties scheduled the guilty plea several times between October 7, 1999 and mid-January 2000.  However, Mr. Levitt cancelled each scheduled plea just before its hearing date.  On January 14, 2000, Mr. Levitt advised AUSA Davis that Alvear-Ruiz had been balking and continued to balk at pleading to the telephone count, and that Alvear-Ruiz was demanding that any prison sentence imposed on the telephone count run concurrent to the prison term Alvear-Ruiz owed in New York State on an unrelated cocaine trafficking conviction. AUSA Davis informed Mr. Levitt that this was not legally possible and was unacceptable to the

government. Mr. Levitt responded that he would try to persuade Alvear-Ruiz to change his mind. As of March 2000, however, Alvear-Ruiz had not agreed to enter a guilty plea, and on March 24, 2000, Judge Trager scheduled the case for trial. (See 96-CR-239, Docket Entry No. 92.) Mr. Levitt and AUSA Davis had no further discussions about a pre-trial disposition.

In his affidavit, dated May 20, 2007, Mr. Levitt basically confirmed AUSA Davis' version of the events surrounding the proposed plea to the telephone count. In particular, Mr. Levitt stated that prior to the retrial on the distribution count, Alvear-Ruiz was offered a plea on a "telephone count" by the government. (May 20, 2007 Levitt Aff. at ¶ 2.) Mr. Levitt "discussed this offer with [Alvear-Ruiz] on several occasions and he rejected the offer." (Id.) Mr. Levitt noted, however, that "[a]t some time during the retrial, [Alvear-Ruiz] told me he was now willing to plead guilty to the telephone count." Levitt conveyed this offer to one of the prosecutors, whom he believes was AUSA Christina Dugger. (Id. at ¶ 3.) However, he was "told the offer was no longer available." (Id.)

Alvear-Ruiz presents no evidence to contradict the description of events provided by AUSA Davis and Mr. Levitt. Rather, he states only in the most conclusory fashion that he "never REJECTED the government's proposed plea agreement." In contrast, both AUSA Davis and Mr. Levitt have explained the circumstances surrounding Alvear-Ruiz's repeated rejections of any proposed plea agreements. The only document that Alvear-Ruiz cites in support of his argument is a letter dated April 14, 2000, and docketed April 18, 2000, that he wrote to the Court. However, that letter makes no mention of his desire to plead guilty but rather discusses issues relating to the seizure of his property during an arrest. (See 96-CR-239, Docket Entry No. 93, "LETTER dated 4.14.00 from Alexis Ruis Alvear to Judge Trager writing to advise the Court

of a misunderstanding that he is experiencing with AUSA Jonathan Davis.")  In addition, Alvear-Ruiz sent that letter to the Court after a status conference at which he made no mention of a desire to plead guilty and at which the case was scheduled for trial.  (See 96-CR-239, Docket Entry No. 93.)  There is no record of any request by Alvear-Ruiz to enter a guilty plea before the trial commenced.  Rather, Alvear-Ruiz only expressed his desire to his counsel during the course of the re-trial, at which point the government was no longer interested in entering into a plea agreement.

In sum, the record fails to support the claim of Alvear-Ruiz that he was never advised of a plea agreement he would have accepted.  The only evidence to support this claim is Alvear-Ruiz conclusory and self-serving statements, while Mr. Levitt and AUSA Davis have submitted detailed affidavits credibly describing the circumstances surrounding the proposed plea agreement.  Accordingly, Alvear-Ruiz's claim that his counsel was ineffective for failing to convey a proposed plea agreement is meritless.

**2.      Ineffective assistance of appellate counsel amendment**

Alvear-Ruiz also requests to amend his habeas petition to include an argument that his appellate counsel, Paul Gamble, was ineffective for failing to perfect a notice of appeal from his resentencing.  A lawyer who disregards a defendant's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable.  Roe v. Flores-Ortega, 528 U.S. 470 (2000).  Where counsel's error leads to "the forfeiture of a proceeding itself," prejudice will be presumed.  Id. at 483-84.  That is, "[w]hen counsel fails to file a requested appeal, a defendant is entitled to a new appeal without showing that his appeal would likely have had merit."  Id. at 477 (internal quotations and brackets omitted).

In the instant case, however, Alvear-Ruiz has not shown that his counsel failed to file a requested appeal. At the request of the Court, the record was supplemented by a detailed affidavit from counsel credibly describing the circumstances concerning Alvear-Ruiz's request to file a notice of appeal. In his affidavit, Mr. Gamble indicated that he was assigned to represent Alvear-Ruiz in April 2003, after Alvear-Ruiz's initial sentence had been vacated and remanded to this Court for resentencing. Prior to resentencing, Mr. Gamble and Alvear-Ruiz discussed various issues that Alvear-Ruiz wished to address, including a claim of ineffective assistance against his trial counsel. Mr. Gamble informed Alvear-Ruiz that he believed that these issues would have to be raised in a petition pursuant to 28 U.S.C. § 2255, as they had been raised before the Court of Appeals for the Second Circuit in petitioner's original appeal. Alvear-Ruiz agreed to pursue his claims in this manner. In a letter to this Court dated May 12, 2003, Mr. Gamble informed the Court that these issues would be raised in a habeas petition and advised the Court that Alvear-Ruiz was ready to proceed to sentence.

Immediately following his resentencing, on August 14, 2003, Alvear-Ruiz directed Mr. Gamble to file a Notice of Appeal. Mr. Gamble complied with this request and filed the Notice of Appeal on August 20, 2003. (Gamble Aff. Exh. D). Subsequently, Mr. Gamble met with Alvear-Ruiz to discuss the merits of an appeal and advised Alvear-Ruiz that there were no non-frivolous issues which could be raised on appeal. Mr. Gamble informed Alvear-Ruiz that if he insisted on pursuing appellate review, he would be ethically bound to file an Anders brief and seek to be relieved as his counsel. Alvear-Ruiz then agreed to withdraw the appeal with prejudice and executed an affidavit to that effect. (November 8, 2003 Ruiz Aff. at ¶ 4.) Mr. Gamble then made a motion for dismissal to the Second Circuit on the basis of Alvear-Ruiz's

affidavit, and the motion was granted on November 20, 2003.  (Gamble Aff. Exh. F).

Following the dismissal of the appeal by Second Circuit, Mr. Gamble began researching the legal issues in Alvear-Ruiz's projected habeas petition.  On or about February 19, 2004, Mr. Gamble was informed by Alvear-Ruiz that he had filed a habeas petition with this Court; that it had been duly docketed; and that they had been directed by the Court to file a response in an order dated April 12, 2004.  Shortly thereafter, Mr. Gamble received a letter from the United States Attorney's Office, forwarding a copy of the Court's April 12, 2004 Order and inquiring as to the status of the habeas petition.  Mr. Gamble subsequently met with Alvear-Ruiz at the Metropolitan Detention Center and advised him of the action the District Court had taken.  Mr. Gamble advised Alvear-Ruiz to allow the petition to proceed, as his stated desire had been to file such a petition to address alleged ineffective assistance of counsel claims.  On April 14, 2005, Mr. Gamble made an application to the District Court seeking to be relieved as petitioner's counsel in order to accept a state appointment.  (Gamble Aff. Exh. G.)

Mr. Gamble's recollection of events is supported by the documentation that he provided with his affidavit, including his May 12, 2003 letter to this Court, the Notice of Appeal, and the affidavit of Alvear-Ruiz withdrawing that Notice of Appeal.  (Gamble Aff. Exh. D, E, F.)  For example, Mr. Gamble noted in his May 12, 2003 letter that the arguments that Alvear-Ruiz wished to raise, including ineffective assistance of trial counsel, had been raised on Alvear-Ruiz's first appeal, such that they could not form the basis of an appeal from the resentencing. In contrast, Alvear-Ruiz's arguments are supported only by his conclusory, self-serving affidavit which directly contradicts his earlier affidavit confirming that he wanted the Notice of Appeal to be withdrawn.  Accordingly, it cannot be said that Alvear-Ruiz's appellate counsel was

ineffective for failing to perfect an appeal from his resentencing.

Thus, because the claims raised in Alvear-Ruiz's request to amend his habeas petition are meritless, his requests to amend are denied. See Foman v. Davis, 371 U.S. 178, 182 (1962) (holding that the court may deny leave to amend under Fed. R. Civ. P. 15(a) for, inter alia, undue delay or the futility of amendment); see also Fama v. Comm'r of Correctional Servs., 69 F. Supp. 2d 388, 394 (E.D.N.Y. 1999) (petitioner not entitled to amend habeas petition where claim "does not even colorably support reversal of his conviction"); Morgan v. Fillion, 98 Civ. 986, 2000 WL 235986, at *10 (S.D.N.Y. Jan. 31, 2000) ("because none of the claims in the amended [habeas] petition has any colorable merit, amendment of the petition would be futile and should be denied").

**B.      Alvear-Ruiz's initial habeas petition**

In his initial habeas petition, Alvear-Ruiz asserts that he was denied effective assistance because his trial counsel failed to pursue avenues of investigation and cross-examination suggested by Alvear-Ruiz. Alvear-Ruiz further claims that two government witnesses, DEA Agents McKenna and Moran, perjured themselves at trial. The Court has considered the arguments in Alvear-Ruiz's petition and finds them to be without merit.

**1.   Ineffective assistance of counsel claim**

Alvear-Ruiz claims that Mr. Levitt provided ineffective assistance because he failed to pursue certain evidence and avenues of cross-examination during trial. Alvear-Ruiz asserts that Mr. Levitt failed to call as a witness Alvear-Ruiz's girlfriend's babysitter, whom Alvear-Ruiz believed could support his case; that Mr. Levitt did not introduce into evidence records from the company that operated Alvear-Ruiz's pager to establish that calls that the prosecution had linked

to him were not made to his pager; that Mr. Levitt failed to present at trial evidence of a trip taken by Alvear-Ruiz to Florida that Alvear-Ruiz believes would have supported his case; and that Mr. Levitt failed to argue that the arresting agents coerced a statement from Alvear-Ruiz. Alvear-Ruiz also claims that Mr. Levitt failed to highlight and pursue inconsistencies in the testimonies of DEA agents McKenna and Moran to demonstrate perjury.

As noted earlier, in order to prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate (1) that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

In assessing the reasonableness of counsel's performance, actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance. Strickland, 466 U.S. at 689. A "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689 (quoted in McKee v. United States, 167 F.3d 103, 106 (2d Cir.1999)). Furthermore, "courts applying Strickland are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury. Lynn v. Blinden, 443 F.3d 238 (2d Cir. 2006). In addition, a "lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." DeLuca v. Lord, 77 F.3d 578, 588 n.3 (2d Cir.1996). If counsel, however, "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker,"

his decisions cannot be fairly characterized as strategic. <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994). Similarly, in order to provide effective assistance, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 691. A court need not decide both prongs of the <u>Strickland</u> test if a party has made an insufficient showing on one. <u>Strickland</u> at 697.

Alvear-Ruiz has failed to show that Mr. Levitt's decisions not to pursue various testimony and avenues of investigation were anything other than reasonable, strategic decisions. In his affidavit of April 19, 2007, Mr. Levitt credibly explains how he considered Alvear-Ruiz's proposals, and how his decisions not to undertake specific lines of cross-examination were guided by the defense's strategy and his assessment of the evidence. In Mr. Levitt's professional judgment, introducing evidence or eliciting testimony suggesting that Alvear-Ruiz was not involved at all in the transactions would have been detrimental to the primary theory of defense; namely, that Alvear-Ruiz knew he was dealing in fake heroin and therefore was not guilty of conspiracy to distribute.[2] (Levitt Aff. at ¶¶ 4-6.)

Mr. Levitt explains that he chose not to call Alvear-Ruiz's girlfriend's babysitter as a witness because she would not have advanced the defense's theory that Alvear-Ruiz had been selling "sham" drugs, and may have undermined it by suggesting that Alvear-Ruiz was trying obscure the identity of "Flaco," the alleged leader of the heroin conspiracy, "even as [Alvear-Ruiz] was endeavoring to provide the agents sufficient information to catalyze his release and facilitate his flight." (Levitt Aff. at ¶ 10.) Similarly, Mr. Levitt declined to introduce evidence

---

[2] The heroin seized at the scene was ultimately determined to be "sham" or fake heroin, consisting of non-controlled substances. (Tr. 293, 404-05.)

of a trip taken by Alvear-Ruiz to Florida the same day as his arrest because he returned with ample time to participate in the crime, and the argument could well have been made that he went to Florida to obtain drugs as Alvear-Ruiz had indicated in his post-arrest statement that he had taken such trips in the past. (Levitt Aff. at ¶ 9.) Discrepancies in Agent Moran's testimony involving whether one of Alvear-Ruiz's co-conspirators waved to him upon his arrival on the crime scene, whether Moran saw Alvear-Ruiz smiling when he arrived, and whether the lighting conditions were conducive to Agent Moran making the observations he testified to were insufficient to impact the jury's assessment in Mr. Levitt's opinion. (Id. at ¶ 7.) Mr. Levitt credibly asserts that these avenues of investigation and examination would not have contributed to the defense strategy advanced at trial. Alvear-Ruiz's conclusory and speculative statements to the contrary do not support his contention that Mr. Levitt rendered ineffective assistance. See Chang, 250 F.3d at 85-86 (where a petitioner's ineffective assistance of counsel claim is a "generic claim . . . based solely on his own self-serving and improbable assertions" it may be appropriate to resolve the issue on affidavits or the documentary record).

The evidence in the record, moreover, supports Mr. Levitt's statements. Overwhelming, credible testimony and evidence linked Alvear-Ruiz to the transactions such as the circumstances of Alvear-Ruiz's arrival at the scene of the crime (Tr. 73-76), the statements of his co-conspirators, Alvear-Ruiz's phone and pager records (Tr. 452-53), and Alvear-Ruiz's post-arrest statement (Tr. 86-90, 91-101), which included details about heroin transactions that were corroborated by his co-conspirators in the case. (Tr. 33; Levitt Aff. at ¶ 5.) Indeed, Ruiz himself acknowledges that the evidence was overwhelming. (See "Motion to Amend Petitioner's Title 28 U.S.C. § 2255" dated July 15, 2004 at 4.) In view of Alvear-Ruiz's statement in particular,

Mr. Levitt's decision not to pursue evidence suggesting that Alvear-Ruiz was entirely unconnected to the crimes, such as the aforementioned pager records, was reasonable.

In fact, in Alvear-Ruiz's appeal, the Second Circuit specifically held that Mr. Levitt's decision to advance a "sham heroin" defense was not unreasonable.  United States v. Alvear-Ruiz, slip op. at 3.  The court noted that there is "strong presumption" that "counsel's conduct was not the result of error but derived instead of trial strategy," and observed that "[t]his presumption proves to be particularly apt where, as here, the defendant confessed in writing to the offense of conviction, rendering a straightforward reasonable-doubt defense highly unlikely to succeed."  United States v. Alvear-Ruiz, slip op. at 3 (citation omitted).

Similarly, Mr. Levitt's choice not to elicit trial testimony from various witnesses, including Alvear-Ruiz's girlfriend's babysitter and Alvear-Ruiz's traveling companion in Florida, were decisions of sound"trial strategy" that do not form "the basis for a finding of ineffective assistance of counsel."  Trapnell v. United States, 735 F.2d 149, 155 (2d Cir. 1983) (decisions by petitioner's counsel concerning which witnesses to call at trial were matters of trial strategy); United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997) (the decision of "whether to call specific witnesses-even ones that may offer exculpatory evidence-is not ordinarily viewed as a lapse in professional representation").

Alvear-Ruiz also argues that his counsel was ineffective for failing to argue that his post-arrest statement was coerced.  There is no evidence in the record suggesting that the arresting DEA agents coerced Alvear-Ruiz into issuing a statement or cooperating.  Rather, the credible testimony from multiple witnesses suggested that Alvear-Ruiz voluntarily provided a statement and cooperated with the agents with the hopes of reducing the charges he would face.  (See Tr.

80-86, 90-92, 158 (Moran); 305-11 (Comellas).)  In its decision on appeal, the Second Circuit

also noted that the DEA agents read Alvear-Ruiz his right twice before taking his statement and

no evidence suggests that he was tricked into cooperating.  United States v. Alvear-Ruiz, slip op.

at 3.  In view of the record, counsel's decision not to pursue a coercion claim was not

unreasonable.

Finally, Alvear-Ruiz also argues that Mr. Levitt was ineffective for failing to highlight

various inconsistences in the testimony of DEA Agents Moran and McKenna and failing to

argue that the agents were perjuring themselves. However, Mr. Levitt did vigorously pursue the

inconsistencies in Agents Moran and McKenna's testimonies, attempting to discredit the agents.

Mr. Levitt particularly focused on Agent Moran's testimony that Gloria Parra de Pena had told

him that Alvear-Ruiz was the leader of the conspiracy, known as "Flaco," and generally

attempted to discredit Agent Moran by highlighting inconsistencies in his testimony.  (See Tr.

125, 132-37, 165-71, 180-82, 200-05; Def. Pre-trial Mem. at 2-3.).  Similarly, Mr. Levitt

addressed Agent McKenna's testimony that the "sham" heroin in the case had resulted in a

positive field test by questioning him during trial and calling an expert to contradict his findings.

(See Tr. 278-85, 288-90 (McKenna); 206 (Moran); 412-215 (Furton).)

Additionally, Alvear-Ruiz has failed to show that Mr. Levitt's alleged failure to pursue

certain avenues of investigation and cross-examination prejudiced his case in any way.  Indeed,

in view of the frivolous nature of many of the issues that Alvear-Ruiz raises, presenting such

evidence to the jury may have undermined the defense's ability to advance more promising

points.  There is no reasonable probability that the evidence and testimony Alvear-Ruiz raises

would have overcome the considerable case against him.  Accordingly, his claim for ineffective

assistance of trial counsel is denied.

### 2. Alleged Perjury by testifying DEA agents

Alvear-Ruiz also claims that DEA Agents McKenna and Moran perjured themselves in their testimony, pointing to inconsistencies in the agents' recollections from the first trial, in February 1999, to the second trial, in July 2000. Alvear-Ruiz asserts that the agents' testimony differed with regards to: the lighting and conditions at the scene; whether one of Alvear-Ruiz's co-conspirators, Gloria Parra de Pena, waved to Alvear-Ruiz when he arrived; whether Agent Moran saw Alvear-Ruiz smiling; and whether Alvear-Ruiz's companion the night of the arrest drove her car from the scene. Alvear-Ruiz also argues that Agent McKenna perjured himself in his testimony regarding the field test results of the substance seized from Parra de Pena. The night of the arrest, Agent McKenna identified the seized substance as heroin; on further testing, it was concluded it was, in fact, "sham" heroin. Alvear-Ruiz suggests that Agent McKenna lied about the results of the field test to protect his case.

A witness commits perjury if he gives "false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001); see also United States v. Dunnigan, 507 U.S. 87, 94 (1993). Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury. See United States v. Monteleone, 257 F.3d at 219, United States v. Sanchez, 969 F.2d 1409, 1414-15 (2d Cir.1992).

The Second Circuit has held that, even if there is a showing of perjury at trial, perjury "does not in itself establish a violation of due process warranting habeas relief." Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir. 2003); see also Sanders v. Sullivan, 863 F.2d 218, 222 (2d

Cir. 1988). When false testimony is provided by a government witness without the prosecution's knowledge, due process is violated only "if the testimony was material and 'the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.' " United States v. Wallach, 935 F.2d 445, 456 (2d Cir.1991) (quoting Sanders, 863 F.2d at 226). Furthermore, even if a witness is found to have perjured himself, "cross-examination and jury instructions regarding witness credibility will normally purge the taint of false testimony." United States v. Joyner, 201 F.3d 61, 82 (2d Cir. 2000); see also United States v. Blair, 958 F.2d 26 (2d Cir. 1992).

Alvear-Ruiz has not made a showing that Agents Moran and McKenna perjured themselves during his trial. The DEA Agents' testimony included inconsistencies on timing, location, and lighting, for example, that do not amount to the kind of "false testimony" required to implicate Alvear-Ruiz's due process rights. In fact, Alvear-Ruiz's own trial counsel acknowledges that may of the DEA Agents' testimonial discrepancies were small and inconsequential to the outcome of the case. (Levitt Aff. at ¶ 7.)

Furthermore, these inconsistencies were fully aired and argued before the jury in Alvear-Ruiz's trial. As discussed above, Mr. Levitt highlighted the inconsistencies in Agents Moran and McKenna's testimony in an effort to discredit them and demonstrate that Alvear-Ruiz was not the leader of the heroin conspiracy. Mr. Levitt also extensively cross examined Agent McKenna on the his incorrect reading of the heroin field test and called an expert witness to rebut the Agent's testimony. (Tr. 276-90, 405-26.) It is the jury's function to resolve inconsistencies in evidence and testimony, and to determine which evidence it will credit. See Quartararo v. Hanslmaier, 186 F.3d 91, 95-96 (2d Cir. 1999) (federal habeas courts must not

assume "the position of a thirteenth juror" as "inconsistencies [are] for the jury to resolve," not the district court).

Even if the testimony by Agents Moran and McKenna had in fact been perjured, it is the Court's view that the jury's verdict would be unaffected. Much of the testimony contested by Alvear-Ruiz, particularly regarding Agent McKenna's allegedly perjured statements, goes to the incorrect field identification by the agent of "sham" heroin as real heroin. However, the government conceded that the heroin was "sham"; the relevant issue at trial was whether Alvear-Ruiz knew the heroin to be fake. In addition, as discussed above, the evidence implicating Alvear-Ruiz was overwhelming. Accordingly, even assuming Agents Moran and McKenna had presented false testimony, this Court does not find that the "'defendant would most likely not have been convicted'" absent the perjured testimony. U.S. v. Wallach, 935 F.2d at 456 (quoting Sanders, 863 F.2d at 226).

In a separate argument, Alvear-Ruiz claims that Agent Moran perjured himself by testifying that Parra de Pena, who had identified Alvear-Ruiz as "Flaco," had fled after her arrest. According to Alvear-Ruiz, Parra de Pena had not fled, and rather continued to work as a DEA informant after her release. He submits an affidavit from a prisoner, Carlos Castano, who was arrested by a DEA task force including Agents McKenna and Moran after Parra de Pena supposedly absconded. Castano states that he viewed a photo of Parra de Pena, and identified her as the confidential informant used in his own case.

A petitioner who claims that he is innocent based on newly acquired, reliable evidence must show that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." Calderon v. Thompson, 523 U.S. 538, 559 (1998). As an inital

matter, Alvear-Ruiz has not provided any credible evidence that Agent Moran knew Parra de Pena's whereabouts and therefore perjured himself in his testimony. To the contrary, Agent Moran provided detailed trial testimony that although Parra de Pena had agreed to act as a confidential information, she failed to appear at a scheduled debriefing with agents, and DEA's efforts to locate her had been unsuccessful. (Tr. 264.) In any event, Alvarez-Ruiz has failed to show how her availability would have resulted in his acquittal.

## CONCLUSION

For the reasons set forth above, the Court denies Alvear-Ruiz's requests to amend his habeas petition. In addition, the Court denies Alvear- Ruiz's petition on the merits. A certificate of appealability will not be issued because he has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). The Clerk of the Court is instructed enter judgment in accordance with this Order and to close the case.

SO ORDERED.


Dated: Brooklyn, N.Y.
      October 24, 2007


                                        Carol Bagley Amon
                                        United State District Judge